# United States District Court
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DYLAN KROHN | § | |
| | § | |
| v. | § | CASE NO. 3:18-CV-2722-S |
| | § | |
| SPECTRUM GULF COAST, LLC and | § | |
| CHARTER COMMUNICATIONS, | § | |
| LLC | § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses Defendant Charter Communications, LLC's ("Charter") Motion to Compel Arbitration and Dismiss Plaintiff's Complaint [ECF No. 14]. For the following reasons, the Court grants the Motion in part and denies the Motion in part.

## I. BACKGROUND

Charter is a telecommunications company offering telephone, internet, and cable services to customers nationwide. Br. in Supp. Mot. to Compel Arbitration ("Br.") 2. Plaintiff Dylan Krohn ("Plaintiff") has been an employee of Charter since 2012. *Id.* On October 6, 2017, Charter launched *Solution Channel*—an alternative dispute resolution program that included a binding arbitration provision governing all claims arising out of employment with Charter. *Id.* Charter alleges that on that date, notice of the new program was sent to Plaintiff via his company email account. *See id.*; Def.'s App. 03-04 ¶ 20, 15-16.

That notice—which Plaintiff opened[1]—announced the program and provided a link to a summary of the program, which, in turn, contained a link to the arbitration agreement

---

[1] Although this evidence was submitted for the first time in Defendant's Reply, the Court will consider it, as it "rebut[s] Plaintiff's Response" and "bolster[s] the arguments" made in the Motion. *See Murray v. TXU Corp.*, Civ. No. Civ. A. 303CV0888P, 2005 WL 131412, at *4 (N.D. Tex. May 27, 2005); *see also Lynch v. Union Pac. R.R. Co.*, Civ. No. 3:13-CV-2701-L, 2015 WL 6807716, at *1 (N.D. Tex. Nov. 6, 2015) (considering the defendant's reply evidence without it seeking leave "[b]ecause Defendant's reply and related evidence are responsive to arguments raised and evidence relied on by Plaintiff in his summary judgment response.").

("Agreement"). *See* Def.'s App. 05-08, 15-16; Def.'s Reply App'x 30-31. The notice also notified Plaintiff of his eligibility to opt-out of the program. *See id.* at 06, 26.

The notice read, in relevant part, as follows:

> In the unlikely event of a dispute not resolved through the normal channels, Charter has launched *Solution Channel*, a program that allows you and the company to efficiently resolve covered employment-related legal disputes through binding arbitration. By participating in *Solution Channel*, you and Charter both waive the right to initiate or participate in court litigation (including class, collective and representative actions) involving a covered claim . . . . Unless you opt out of participating in *Solution Channel* within the next 30 days, you will be enrolled."

Def.'s App. 05-06, 15-16. Plaintiff did not exercise his right to opt-out of the program. Def.'s App. 04.

The Agreement includes the following language:

> B. **Covered Claims.** You and Charter mutually agree that the following disputes, claims, and controversies (collectively referred to as "covered claims") will be submitted to arbitration in accordance with this Agreement:
>
> 1. all disputes, claims, and controversies that could be asserted in court or before an administrative agency or for which you or Charter have an alleged cause of action related to pre-employment, employment, employment termination or post-employment-related claims, whether the claims are denominated as tort, contract, common law, or statutory claims (whether under local, state or federal law), including without limitation claims for: collection of overpaid wages and commissions, recovery of reimbursed tuition or relocation expense reimbursement, damage to or loss of Charter property, recovery of unauthorized charges on company credit card; claims for unlawful termination, unlawful failure to hire or failure to promote, wage and hour-based claims including claims for unpaid wages, commissions, or other compensation or penalties (including meal and rest break claims, claims for inaccurate wage statements, claims for reimbursement of expenses) . . . .

*Id.*; Def.'s App. 09. Plaintiff filed this action in state court on September 11, 2018, asserting causes of action for breach of contract, quantum meruit, and fraud—all based on alleged unpaid

commissions. Pl.'s Orig. Pet. ¶¶ 34-50. Defendants removed the case to this Court on October 15, 2018, *see* ECF No. 1, and Charter filed the pending Motion on March 20, 2019.

## II. ANALYSIS

Pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, written arbitration provisions "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA provides that a party seeking to enforce an arbitration provision may petition the court for "an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.* § 4.

Enforcement of an arbitration agreement involves two analytical steps. *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). The first is contract formation—whether the parties entered into any arbitration agreement at all. *Id.* The second involves contract interpretation to determine whether the claim at issue is covered by the arbitration agreement. *Id.* Ordinarily, both steps are questions for the Court. *Id.* (citing *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003)). Plaintiff and Charter agree that if there is a valid arbitration agreement, Plaintiff's claims fall within the scope of the Agreement. This Order, therefore, addresses only the first step of the analysis.

### A. *Existence of Valid Arbitration Agreement*

#### (1) *Choice of Law*

When a party seeks to compel arbitration based on a contract, courts must determine whether there is a contract between the parties at all. *Arnold v. HomeAway, Inc.*, 890 F.3d 546, 550 (5th Cir. 2018) (citing *Kubala*, 830 F.3d at 201-02). "[I]t is for the courts to decide at the outset whether an agreement was reached, applying state-law principles of contract." *Will-Drill Res.*, 352 F.3d at 218. Federal courts look to state law to determine whether parties formed a valid arbitration agreement. *OPE Int'l LP v. Chet Morrison Contractors, Inc.*, 258 F.3d 443, 445-46

3

(5th Cir. 2001). "A federal court must follow the choice-of-law rules of the state in which it sits." *See Fina, Inc. v. ARCO*, 200 F.3d 266, 269 (5th Cir. 2000) (quoting *St. Paul Mercury Ins. v. Lexington Ins.*, 78 F.3d 202, 205 (5th Cir. 1996)). Texas courts apply the "most significant relationship test" to determine which state's law to apply in a breach of contract case. *See DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3 785, 802 (5th Cir. 2007) (citing *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 848 (Tex. 2000)). Under this test, courts look at factors such as the place of contracting, the place of negotiating the contract, the place of performance, the location of the subject matter of the contract, and the residency of the parties. *See id.* Here, Texas law governs because Texas has the most significant relationship to this dispute. Specifically, Plaintiff and Charter entered into the Agreement in Texas, Charter employed Plaintiff in Texas, and Plaintiff resided in Texas. *See* Br. 6.

### (2) *Arbitration Agreements in At-Will Employment Contracts*

Although an agreement to arbitrate may be reached via a change to an existing at-will employment contract, *see In re Halliburton Co.*, 80 S.W.3d 566, 568 (Tex. 2002), to be enforceable, the employee must (1) receive notice of the agreement to arbitrate and (2) accept it. *In re Dall. Peterbilt, Ltd.*, 196 S.W.3d 161, 162 (Tex. 2006) (per curiam) (citation omitted).

#### a. *Notice*

Texas courts look to "all communications between the employer and employee" to determine whether the employee received adequate notice. *Id.* (citation omitted). To be sufficient, the notice must "unequivocally notif[y]" the employee of the existence of an arbitration agreement. *In re Halliburton*, 80 S.W.3d at 568 (quoting *Hathaway v. General Mills, Inc.*, 711 S.W.2d 227, 229 (Tex. 1986)). A Central District of California case with nearly identical facts—though not binding authority on this Court—is persuasive to this analysis. *See* Statement of Decision Granting Defs.' Mot. to Compel Arbitration, *Castorena et al. v. Charter Comm'cns*, No. 2:18-cv-07981-

JFW-KS (C.D. Cal. Dec. 14, 2018), ECF No. 41 [hereinafter "*Castorena* Statement of Decision"]. There, the court compelled arbitration based on the very same email that was sent to Plaintiff in this case. *Id.* at 8-9. The court reasoned that recipients of that email were "clearly instructed that if they did not 'opt out'" of the program, they would "waive the right to initiate or participate in court litigation . . . involving a covered claim," and therefore, the notice was adequate. *Id.* at 9.

Similarly, the Court finds that the email sent to Plaintiff on October 6, 2017 ("Email"), constituted sufficient notice. *See* Def's App. 15-16. The Email explicitly stated that Charter had launched a new program that required "binding arbitration." *Id.* The Email further stated that Plaintiff "waive[d] the right to initiate or participate in court litigation." *Id.* The Email also explained that the full Agreement could be accessed through a link in the Email to Charter's intranet, and that the Agreement would be binding on any employee who did timely opt-out. *See id.* The Court finds those statements and explanations "unequivocally notified" Plaintiff of the existence of the Agreement. *Halliburton*, 80 S.W.3d at 568; *see also Castorena* Statement of Reason. The Email, therefore, provided Plaintiff with adequate notice.

b. *The Mailbox Rule*

Plaintiff's argument that he "does not recall receiving or having read the email," and therefore did not receive adequate notice, is unpersuasive. Resp. ¶ 7. "[W]hen there is a material question as to whether a document was actually received," courts apply the mailbox rule. *Custer v. Murphy Oil USA, Inc.*, 503 F.3d 415, 419 (5th Cir. 2007). Under that rule, once Charter creates a presumption of receipt of the Email, that presumption must then be rebutted by Plaintiff with credible evidence. *See id.*; *see also Nart v. Open Text Corp.*, No. A-10-CV-870-LY-AWA, 2013 WL 442009, at *2 (W.D. Tex. Feb. 5, 2013) (applying mailbox presumption to email absent evidence of "bounce back"). "It is not necessary that [Charter] prove actual receipt of the notice." *Marsh v. First USA Bank, N.A.*, 103 F. Supp. 2d 909, 918 (N.D. Tex. 2000). Instead, Charter need

5

only show that it sent the Email in keeping with its regular procedures. *See id.* Charter met this burden by submitting the Affidavit of Tammie Knapper, which swears that Charter sent the Email to a group of employees that included Plaintiff. *See Gamel v. Grant Prideco, L.P.*, 625 F. App'x 690, 694 (5th Cir. 2015) (noting a sworn statement is credible evidence of mailing for purposes of the mailbox rule); *see also* Def.'s App. 01-04. Plaintiff's bare allegation of memory loss is not credible evidence sufficient to rebut the presumption of receipt.[2] *See United States v. Ekong*, 518 F.3d 285, 287 (5th Cir. 2007) ("[Defendant's] affidavit of non-receipt was not supported by circumstantial evidence."); *see also Douglas v. Oceanview Healthcare, Inc.*, Civ. A. No. 3:15-CV-0225, 2016 WL 4147244, at *4 (S.D. Tex. Aug. 2, 2016) (holding that statements of non-receipt were insufficient to deny a motion to compel arbitration). Plaintiff, therefore, had adequate notice of the Agreement.

### (3) *Acceptance of the Agreement*

The next issue is whether Plaintiff accepted the Agreement. *See Dall. Peterbilt*, 196 S.W.3d at 162. As explained by the Supreme Court of Texas, "[i]f [an] employee receives notice and continues working with knowledge of the modified employment terms, the employee accepts them as a matter of law." *In re Dillard Dep't Stores, Inc.*, 198 S.W.3d 778, 780 (Tex. 2006); *see also Elsadig v. Luxottica Retail N. Am., Inc.*, No. 3:16-CV-02055-L, 2017 WL 3267926, at *6 (N.D. Tex. July 10, 2017), *report and recommendation adopted*, No. 3:16-CV-02055-L, 2017 WL 3234027 (N.D. Tex. July 31, 2017). It is undisputed that Plaintiff currently works for Charter. *See* Br. 2; Pl.'s Orig. Pet. ¶ 12. Therefore, Plaintiff accepted the Agreement. For the foregoing reasons, the Court finds that a valid agreement to arbitrate exists and compels this dispute to arbitration.

---

[2] The Court considered Plaintiff's statement that his "company email archives do not currently reflect that he received the email." Resp. 3. That allegation, however, is ultimately self-defeating, as Plaintiff acknowledges that "the auto archive system was not always functioning and may not have been functioning during the period including the date on which the email was purportedly sent." *Id.* Thus, it does not affect the Court's analysis.

### B. *Stay or Dismissal*

In the Motion, Charter asks that the Court dismiss the case in its entirety with prejudice if it determines that all claims should be sent to arbitration. *See* Mot. 9. The FAA "provides that when claims are properly referable to arbitration, that upon application of one of the parties, the court shall stay the trial of the action until the arbitration is complete." *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (citing 9 U.S.C. § 3). The Fifth Circuit has interpreted that language as authorizing "dismissal of the case when all of the issues raised in the district court must be submitted to arbitration." *Id.* (emphasis omitted). The decision of whether to stay or dismiss a case pending arbitration is within the sound discretion of the district court. *See Grasso Enters., LLC v. CVS Health Corp.*, 143 F. Supp. 3d 530, 542 (W.D. Tex. 2015) (citation omitted). Here, because all of Plaintiff's claims against Charter will be resolved by arbitration, the Court dismisses those claims with prejudice. Plaintiff's remaining claims against non-moving Defendant Spectrum Gulf Coast, LLC, however, are stayed pending resolution of the arbitration. *See* 9 U.S.C. § 3.

### III.     CONCLUSION

For the reasons discussed above, the Court grants in part and denies in part Charter's Motion to Compel Arbitration and Dismiss Plaintiff's Complaint. The Court finds that an agreement, including an arbitration provision, exists between the parties. Plaintiff's claims against Defendant Charter Communications, LLC are dismissed with prejudice. Plaintiff's remaining claims against Defendant Spectrum Gulf Cost, LLC will be stayed and administratively closed pending the outcome of arbitration. *See* 9 U.S.C. § 3. The Court directs the Clerk of Court to administratively close this case until such time as the Court orders it to be reopened.

**SO ORDERED.**

SIGNED September 19, 2019.

                                                               **KAREN GREN SCHOLER**
                                                               **UNITED STATES DISTRICT JUDGE**